APPEAL,CLOSED,PROSE−NP,TYPE−F

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:22−cv−02809−CRC
### Internal Use Only

RAVEN v. SAJET  
Assigned to: Judge Christopher R. Cooper  
Cause: 28:1983 Civil Rights

Date Filed: 09/12/2022  
Date Terminated: 12/17/2024  
Jury Demand: None  
Nature of Suit: 440 Civil Rights: Other  
Jurisdiction: U.S. Government Defendant

**Plaintiff**

JULIAN MARCUS RAVEN  represented by  JULIAN MARCUS RAVEN  
105 Capital Street  
Apt #302  
lynchburg, VA 24502  
PRO SE

V.

**Defendant**

KIM SAJET  represented by  **Dimitar Georgiev−Remmel**  
*Smithsonian National Portrait Gallery Director*  
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA  
Civil Division  
601 D Street NW  
Washington, DC 20530  
202−815−8654  
Email: dimitar.georgiev−remmel@usdoj.gov  
*LEAD ATTORNEY*  
*ATTORNEY TO BE NOTICED*

**Kaitlin Kerry Eckrote**  
DOJ−USAO  
Civil Division  
601 D Street NW  
Room 7.1525  
Washington DC, DC 20530  
202−252−2485  
Email: kaitlin.eckrote@usdoj.gov  
*TERMINATED: 03/21/2024*  
*LEAD ATTORNEY*  
*ATTORNEY TO BE NOTICED*

**Sean Michael Tepe**  
U.S. DEPARTMENT OF JUSTICE  
555 Fourth Street, NW  
Washington, DC 20530

1

(202) 252−2533
Fax: (202) 252−2599
Email: sean.tepe@usdoj.gov
*TERMINATED: 10/24/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/12/2022 | 1 | COMPLAINT against KIM SAJET ( Filing fee $ 402, receipt number 203018) filed by JULIAN MARCUS RAVEN. (Attachment: # 1 Civil Cover Sheet)(zjm) . (Entered: 09/16/2022) |
| 09/12/2022 |   | SUMMONS Not Issued as to KIM SAJET (zjm) (Entered: 09/16/2022) |
| 09/22/2022 |   | SUMMONS (3) Issued as to KIM SAJET, U.S. Attorney and U.S. Attorney General (zjm) (Entered: 09/22/2022) |
| 09/26/2022 | 2 | AFFIDAVIT of Mailing by JULIAN MARCUS RAVEN. (zjm) (Entered: 10/03/2022) |
| 11/27/2022 | 3 | Unopposed MOTION Motion to Set Deadline to Respond to Complaint by KIM SAJET. (Tepe, Sean) (Entered: 11/27/2022) |
| 11/28/2022 |   | MINUTE ORDER granting Defendant's 3 Motion to Set Deadline for Response to Complaint. Defendant shall file an answer to the complaint by February 10, 2023. Signed by Judge Christopher R. Cooper on 11/28/2022. (lccrc2) (Entered: 11/28/2022) |
| 12/05/2022 | 4 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 10/3/2022. ( Answer due for ALL FEDERAL DEFENDANTS by 12/2/2022.), RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 10/03/2022., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. KIM SAJET served on 9/30/2022 (zjm) (Entered: 12/08/2022) |
| 02/10/2023 | 5 | MOTION to Dismiss by KIM SAJET. (Attachments: # 1 Text of Proposed Order)(Tepe, Sean) (Entered: 02/10/2023) |
| 02/10/2023 | 7 | NOTICE of Change of Address by JULIAN MARCUS RAVEN (zjm) (Entered: 02/14/2023) |
| 02/13/2023 | 6 | Order advising plaintiff to respond to 5 Defendant's Motion to Dismiss by March 6, 2023 or Court may deem matter as conceded. Signed by Judge Christopher R. Cooper on 2/13/2023. (lccrc2) (Entered: 02/13/2023) |
| 03/03/2023 | 8 | Memorandum in opposition to re 5 Motion to Dismiss filed by JULIAN MARCUS RAVEN. (zjm) (Entered: 03/07/2023) |
| 03/13/2023 | 9 | REPLY to opposition to motion re 5 MOTION to Dismiss filed by KIM SAJET. (Tepe, Sean) (Entered: 03/13/2023) |
| 07/05/2023 | 10 | OPINION AND ORDER denying Defendant's 5 Motion to Dismiss without prejudice. See full Opinion and Order for details. Signed by Judge Christopher R. Cooper on 7/5/2023. (lccrc2) (Entered: 07/05/2023) |
| 10/24/2023 | 11 |   |

| | | |
|---|---|---|
| | | NOTICE OF SUBSTITUTION OF COUNSEL by Kaitlin Kerry Eckrote on behalf of KIM SAJET Substituting for attorney Sean M. Tepe (Eckrote, Kaitlin) (Entered: 10/24/2023) |
| 03/21/2024 | 12 | NOTICE OF SUBSTITUTION OF COUNSEL by Dimitar Georgiev−Remmel on behalf of KIM SAJET Substituting for attorney Kaitlin K. Eckrote (Georgiev−Remmel, Dimitar) (Entered: 03/21/2024) |
| 04/08/2024 | 13 | MOTION to Dismiss by KIM SAJET. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Certificate of Service)(Georgiev−Remmel, Dimitar) (Entered: 04/08/2024) |
| 04/24/2024 | 14 | Memorandum in opposition to re 13 Motion to Dismiss filed by JULIAN MARCUS RAVEN. (zjm) (Entered: 04/29/2024) |
| 04/24/2024 | 15 | MOTION for Trial by JULIAN MARCUS RAVEN. (zjm) (Entered: 04/29/2024) |
| 04/29/2024 | 16 | REPLY to opposition to motion re 13 MOTION to Dismiss filed by KIM SAJET. (Georgiev−Remmel, Dimitar) (Entered: 04/29/2024) |
| 04/29/2024 | 17 | Memorandum in opposition to re 15 Motion for Trial filed by KIM SAJET. (Georgiev−Remmel, Dimitar) (Entered: 04/29/2024) |
| 10/16/2024 | 18 | MOTION to Compel by JULIAN MARCUS RAVEN. (zdp) (Entered: 10/21/2024) |
| 10/23/2024 | 19 | RESPONSE re 18 MOTION to Compel filed by KIM SAJET. (Georgiev−Remmel, Dimitar) (Entered: 10/23/2024) |
| 12/02/2024 | 20 | MOTION for Leave to File Interlocutory Appeal by JULIAN MARCUS RAVEN. (zdp) (Entered: 12/03/2024) |
| 12/16/2024 | 21 | Memorandum in opposition to re 20 Motion for Leave to File filed by KIM SAJET. (Georgiev−Remmel, Dimitar) (Entered: 12/16/2024) |
| 12/16/2024 | 22 | ORDER granting Defendant's 13 Motion to Dismiss and denying as moot Plaintiff's 15 Motion for Trial by Jury and Damages, 18 Motion to Compel, and 20 Motion for Leave to File Interlocutory Appeal. See full Order and accompanying Memorandum Opinion for details. Signed by Judge Christopher R. Cooper on 12/16/2024. (lccrc2) (Entered: 12/16/2024) |
| 12/16/2024 | 23 | MEMORANDUM OPINION re 22 Order granting Defendant's 13 Motion to Dismiss and denying as moot Plaintiff's 15 Motion for Trial by Jury and Damages, 18 Motion to Compel, and 20 Motion for Leave to File Interlocutory Appeal. See full Memorandum Opinion for details. Signed by Judge Christopher R. Cooper on 12/16/2024. (lccrc2) (Entered: 12/16/2024) |
| 01/14/2025 | 24 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 22 Order on Motion to Dismiss, 23 Memorandum & Opinion,, Order, by JULIAN MARCUS RAVEN. Fee Status: No Fee Paid. Parties have been notified. (zjm) (Entered: 01/16/2025) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Julian Marcus Raven

Plaintiff

vs.

Civil Action No. 22-cv-2809

Director Kim Sajet, Smithsonian National Portrait Gallery

Defendant

## NOTICE OF APPEAL

Notice is hereby given this 27th day of December, 20 24, that

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the judgment of this Court entered on the 16th day of December, 2024

in favor of Defendant Kim Sajet

against said Julian Marcus Raven

_/s/ Julian Marcus Raven_, pro se
Attorney or Pro Se Litigant

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil action must be filed within 30 days after the date of entry of judgment or 60 days if the United States or officer or agency is a party)

**CLERK**  Please mail copies of the above Notice of Appeal to the following at the addresses indicated:

Dimitar P. Georgiev-Remmel | Assistant U.S. Attorney
U.S. Attorney's Office – District of Columbia
601 D Street NW, Washington, DC 20530

**RECEIVED**
JAN 14 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JULIAN MARCUS RAVEN**,<br><br>Plaintiff,<br><br>v.<br><br>**KIM SAJET**, in her capacity as National Portrait Gallery Director,<br><br>Defendant. | Case No. 22-cv-2809 (CRC) |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's [13] Motion to Dismiss is GRANTED. It is further

**ORDERED** that Plaintiff's [15] Motion for Trial by Jury and Damages, [18] Motion to Compel, and [20] Motion for Leave to File Interlocutory Appeal are DENIED as MOOT. It is further

**ORDERED** that the complaint and case are dismissed.

This is a final appealable Order.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:   December 16, 2024

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIAN MARCUS RAVEN,<br><br>Plaintiff,<br><br>v.<br><br>KIM SAJET, in her capacity as National Portrait Gallery Director,<br><br>Defendant. | Case No. 22-cv-2809 (CRC) |

## MEMORANDUM OPINION

This case is the latest skirmish in artist Julian Marcus Raven's long-running campaign against the Smithsonian Institution ("the Smithsonian").[1] In 2017, Raven unsuccessfully sued Kim Sajet, the Director of the Smithsonian's National Portrait Gallery ("NPG"), after the museum refused to exhibit his portrait of then-President-elect Trump. Five years later, he mentioned Sajet in a tweet about purported corruption at the Smithsonian, and she blocked him from her Twitter account. Raven then brought this pro se lawsuit. He asserted that Sajet's Twitter account is a public forum used to share information about the NPG, and when Sajet blocked him, she violated his First Amendment rights. Sajet previously moved to dismiss Raven's complaint. The Court denied her motion without prejudice and stayed the case pending two Supreme Court decisions addressing when a public official's social-media activity constitutes state action as necessary to make out a First Amendment claim. After those cases were decided, Sajet renewed her motion, which the Court will now grant. When evaluated in light of the Supreme Court's recent guidance, Raven's complaint and other pleadings do not

---

[1] Benjamin Wofford, The Surreal Story of a Trump-Loving Artist's War With the Smithsonian, Washingtonian (Aug. 4, 2019), https://www.washingtonian.com/2019/08/04/julian-raven-trump-artist-national-portrait-gallery-smithsonian/.

1

plausibly allege that Sajet purported to use her authority to speak for the Smithsonian when operating her Twitter account.  Blocking Raven from the account therefore did not violate the First Amendment.

I.  **Background**

The Court draws the following factual background from the allegations in the complaint, which the Court must accept as true at this stage of the case.  United States v. Gaubert, 499 U.S. 315, 327 (1991).

Pro se plaintiff Julian Marcus Raven is an artist and author.  Compl. ¶ 8.  Defendant Kim Sajet is the Director of the NPG.  Id. ¶ 1.  Their contentious relationship began in late 2016, when Raven first contacted Sajet about having his portrait of then-President-elect Trump displayed at the museum.  See id. ¶ 29.  That dispute is detailed in Raven v. Sajet ("Raven I"), 334 F. Supp. 3d 22 (D.D.C. 2018), in which another court in this district dismissed First and Fifth Amendment claims Raven asserted against Sajet.  Id. at 32–33.

This case arises from Raven and Sajet's online interactions.  Sajet operates a Twitter account under the handle @KimSajet.  Compl. ¶ 1.  (Twitter was renamed X in July 2023, but the Court will continue to refer to it as Twitter because the events in question occurred prior to the rebranding).  Raven, whose Twitter handle is @thejulianraven, id. ¶ 8, contends that Sajet's Twitter account is "an important source of news and information about" the NPG because it is "accessible to all" and used "to make formal Smithsonian announcements, report on meetings, upcoming shows[,] and general Smithsonian information," id. ¶¶ 1, 3.

Sajet's account was established in 2013 under the handle @NPGDirector.  Id. ¶ 27.  The account biography previously included the title "Director, National Portrait Gallery" and a link to the Smithsonian's website.  See id. ¶¶ 27–28, 31.  In early 2018, however, Sajet's Twitter

2

account handle changed from @NPGDirector to @KimSajet, and Sajet added a disclaimer to the biography that "[a]ll opinions expressed are my own." See id. ¶¶ 30–31. She also removed "Director, National Portrait Gallery" and the link to the Smithsonian website from the account biography. See id. ¶ 31.

Raven alleges that, despite these changes, "@KimSajet remain[ed] the platform by which the Smithsonian National Portrait Gallery Director tweet[ed] and retweet[ed] any and all news relating to the portrait gallery, events, art shows, podcasts[,] or relevant Smithsonian tweets." Id. ¶ 33. To illustrate, he offers screenshots of some of Sajet's tweets. In one, Sajet shared a link to a Washingtonian magazine article reporting that Hillary Clinton and Alicia Keys would be the presenters at the 2022 National Portrait Gallery Gala with the caption "Portraiture is powerful @smithsoniannpg #PortraitofaNation #PortraitGala #myNPG." Id. ¶ 20; see also id. ¶¶ 12, 18 (examples of Sajet's retweets). In another, she includes a link to a Washington Post article on the unveiling of Barack and Michelle Obama's portraits at the White House. Id. ¶ 14.

On September 1, 2022, Raven "mentioned" Sajet in a tweet about "the corruption at the Smithsonian National Portrait Gallery and Smithsonian in general." Id. ¶ 1. One Twitter user "mentions" another by including the other user's handle in the tweet, which notifies that other user of the tweet. Id. ¶ 22. Sajet then blocked Raven from her Twitter account. Id. ¶ 1. A Twitter user who has been blocked from another's account is prevented from following that user or seeing his or her tweets. Id. ¶ 25.

Raven filed suit against Sajet in her official capacity. Id. ¶ 9. He argued that blocking him violated his First Amendment rights by imposing "unconstitutional restriction[s] on his participation in a designated public forum[,] . . . his right to access statements that [Sajet] is otherwise making available to the public at large[,] . . . [and] his right to petition the government

3

for redress of grievances." Id. ¶ 37. He sought declaratory and injunctive relief—specifically, an order that Sajet unblock him. Id. at Prayer for Relief.

Sajet moved to dismiss on multiple grounds. ECF No. 5 at 1. At the time, the U.S. Supreme Court was scheduled to hear Lindke v. Freed, 601 U.S. 187 (2024), and O'Connor-Ratcliff v. Garnier, 601 U.S. 205 (2024), both concerning when a public official on social media acts in a public versus private capacity. To conserve judicial resources, the Court denied Sajet's motion without prejudice and stayed the case pending the Supreme Court's resolution of Lindke and O'Connor-Ratcliff. See Op. & Order (ECF No. 10), at 3.

The Supreme Court decided Lindke and O'Connor-Ratcliff in March 2024. Sajet once again moved to dismiss Raven's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Opp'n (ECF No. 13). Raven opposed, moved for a jury trial, and later moved to compel a decision and for leave to file an interlocutory appeal so that he can present his claims directly to the Supreme Court. See ECF Nos. 14–15, 18, 20.

## II. Legal Standards

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A pro se litigant's complaint must be evaluated "in light of all filings, including filings responsive to a motion to dismiss, which here includes [plaintiff's] opposition to the motion to dismiss and attached exhibits." Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024) (quotation

4

marks omitted) (quoting Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015)).  But pro se filings still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'"  Jones v. Horne, 634 F.3d 588, 596 (D.C. Cir. 2011) (quoting Atherton v. District of Columbia, 567 F.3d 672, 681–82 (D.C. Cir. 2009)).  "As such, while 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Montgomery v. Mayorkas, No. 23-cv-3931 (BAH), 2024 WL 4973406, at *3 (D.D.C. Dec. 4, 2024) (quoting Twombly, 550 U.S. at 555).

### III. Analysis

"[T]he Free Speech Clause prohibits only *governmental* abridgment of speech," not "*private* abridgment of speech."  Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 808 (2019).  The Smithsonian is a government entity for constitutional purposes, see Raven I, 334 F. Supp. at 28–29, so, as one of its directors, Sajet is a public official.  "[P]ublic officials can act on behalf of the State, [but] they are also private citizens with their own constitutional rights." Lindke, 601 U.S. at 196.  Therefore, to have stated a First Amendment claim, Raven must have plausibly pled that Sajet acted in her official, rather than private, capacity on her Twitter account.

In Lindke, the Supreme Court held that a public official's social-media activity constitutes state action "only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media."  601 U.S. at 191.  This inquiry is particularly "fact-intensive" given that many of the "approximately 20 million state and local government employees across the Nation, with an extraordinarily wide range of job descriptions . . . use social media for personal communication, official communication, or both—and the line between the two is often blurred."  Id. at 197.

5

"The nature of the technology [also] matters to the state-action analysis." Id. at 204. When a public official's decision to block an individual is challenged, courts must "consider whether [that official] . . . had engaged in state action with respect to any post on which [a plaintiff] . . . wished to comment" because "blocking operate[s] on a page-wide basis." Id. Here, because Sajet blocked Raven, the Court will consider whether Sajet engaged in state action with respect to any tweet referenced in Rajet's filings; it will also take into account his general descriptions of her social-media activity. To be clear, however, an official who blocks a user from her social-media account violates that user's First Amendment rights only if, on the account, the official spoke in her "official capacity" or used her "speech to fulfill '[her] . . . responsibilities pursuant to state [or federal] law.'" Id. at 201 (quoting West v. Atkins, 487 U.S. 42, 50 (1988)). So, the state-action analysis applies to the speech on the account, rather than the act of blocking.

A. Actual Authority

Lindke's first prong asks whether the defendant has "actual authority rooted in written law or longstanding custom to speak for the State," which "extend[s] to speech of the sort that caused the alleged rights deprivation." Id. This requirement stems from the fact that "[a]n act is not attributable to a State unless it is traceable to the State's power or authority." Id. at 198. As a result, at this step, courts must ask "whether making official announcements is *actually* part of the job that the State entrusted the official to do" based on "[s]tatutes," "ordinances," "regulations," or "'persistent practices of state officials' that are 'so permanent and well settled' that they carry 'the force of law.'" Id. at 200–01 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970)). "If an official has authority to speak for the State, [s]he may have the authority to do so on social media even if the law does not make that explicit." Id. at 200.

6

Raven's filings plausibly allege that Sajet has actual authority to speak to the public on the Smithsonian's behalf. "[A] grant of authority over particular subject matter may reasonably encompass authority to speak about it officially." Id. As Raven notes, the Smithsonian's Standards of Conduct indicate that "Unit Directors" have "broad decision-making authority within the Institution." Opp'n at 4 (quoting Smithsonian Institution, Standards of Conduct). And the Smithsonian's website, of which the Court takes judicial notice,[2] includes Sajet under "Our Leadership." See Kim Sajet, Smithsonian, https://www.si.edu/about/bios/kim-sajet (last visited Dec. 16, 2024). As NPG director, the site explains, Sajet "leads the museum" and "oversees a core staff of 97 with a total annual federal budget of about $23 million and a collection of about 26,000 objects that attracts around 2 million visitors a year." Id. Common sense dictates that an agency director (like Sajet) charged with overseeing an agency (like the NPG, including its "core staff," "annual federal budget of about $23 million," and "collection of about 26,000 objects") and representing it to external stakeholders (like the NPG's "2 million visitors a year") is authorized to communicate with the public about that agency's business.

This case, involving an individual with established leadership control over an agency, does not implicate the Supreme Court's concerns about a potential "mirage" of state authority. Lindke, 601 U.S. at 199. Sajet's promotion of the NPG on Twitter is different, for instance, from a city manager without any authority over public health posting "a list of local restaurants with health-code violations." Id. While public health is outside that hypothetical city manager's "portfolio," a director engaging in speech that publicizes an agency's activities is safely within

---

[2] Lee v. Blinken, No. 23-CV-1783 (DLF), 2024 WL 639635, at *1 n.1 (D.D.C. Feb. 15, 2024) ("At this motion-to-dismiss stage, the court may take judicial notice of publicly available information on official government websites." (first citing Fed. R. Evid. 201(b); and then citing Cannon v. District of Columbia, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013))).

7

her "bailiwick."  Id.  To hold otherwise would require the Court to blind itself from the nature of Sajet's directorship and the extent of her authority over the NPG.

Moreover, while Raven has not pointed to any specific law or regulation vesting authority in Sajet to speak on the NPG's behalf, this power is at least plausibly supported by his allegations of past "custom[] or usage" based on Sajet's prior operation of the Twitter account under the handle @NPGDirector.  Id. at 200.  As a result, Raven's allegations satisfy Lindke's first prong.

B.  Purported Use of Authority

Unfortunately for Raven, Sajet's actual authority does not get his complaint beyond dismissal.  "For social-media activity to constitute state action, an official must not only have state authority—[s]he must also purport to use it."  Id. at 201.  The "context" of an official's speech informs this step of the analysis.  Id. at 202.  For example, "label[s] (*e.g.*, 'this is the personal page of James R. Freed') or . . . disclaimer[s] (*e.g.*, 'the views expressed are strictly my own')" afford officials "a heavy (though not irrebuttable) presumption that all of the posts on his page were personal."  Id.

When Sajet blocked Raven on Twitter, her account contained a prominent disclaimer stating:  "All opinions expressed are my own."  See Compl. ¶ 31.  As a result, she is entitled to a "heavy . . . presumption that all of the posts on . . . [her] page were personal."  Lindke, 601 U.S. at 202.  A plaintiff seeking to rebut this strong presumption must offer "significant evidence" that the social-media activity in question was an exclusively governmental function, like proof that the defendant used her personal page to exercise a power that "belongs exclusively to the State."  Id. at 202 & n.2.  Specific examples of such use are "an official who designates space on his nominally personal page as the official channel for receiving comments on a proposed

8

13

regulation" or "a mayor . . . [who] hosted a city council meeting online by streaming it only on his personal Facebook page." Id. at 202 n.2. At the motion-to-dismiss stage, the Court understands the requirement that the plaintiff offer "significant evidence" to mean that he must plead "significant" factual allegations of "official" activity being conducted on the account in question. Id. at 202.

Raven has not satisfied this burden. He does not allege that Sajet used her Twitter account to "exercise . . . [a] *necessarily* governmental" function. Id. at 202 n.2 (emphasis added). The crux of his complaint is that Sajet tweeted about "art, portraiture, . . . the Smithsonian[,] and [her] . . . job responsibilities as Director of the Smithsonian National Portrait Gallery." Opp'n at 12; see also Compl. ¶¶ 3, 27, 33. But "an official does not necessarily purport to exercise . . . [her] authority simply by posting about a matter within it." Lindke, 601 U.S. at 203. Otherwise, officials would lose their own First Amendment "right[s] to speak about public affairs in their personal capacities." Id.

Nor does Raven's conclusory assertion that Sajet used the account to "make formal Smithsonian announcements," Compl. ¶ 3, constitute sufficient "factual matter" to "permit[] the [C]ourt to infer" that she conducted government functions on her Twitter account. Jones, 634 F.3d at 596 (quoting Atherton, 567 F.3d at 681–82). Sajet's posts touting the NPG generally and publicizing various events are at most "compatible with *either* a 'personal capacity' or 'official capacity' designation." Lindke, 601 U.S. at 202 n.2 (emphasis added). After all, any private supporter of the museum would have the right and ability to post the same things. Indeed, almost all the tweets Raven cites contain links to external articles or other publicly available content. Compl. ¶¶ 12, 14, 18, 20, 31, 33; cf. Lindke, 601 U.S. at 203 ("If, by contrast, the mayor merely repeats or shares otherwise available information—for example, by linking to the

9

parking announcement on the city's webpage—it is far less likely that he is purporting to exercise the power of his office."). And there is another, more patently official channel for NPG news: the NPG Twitter account (@smithsoniannpg), from which Raven does not purport to have been blocked. Cf. Compl. ¶¶ 33–34 (describing @smithsoniannpg as the "official gallery twitter page").

Raven also describes Sajet's account as a "public forum" and maintains that her tweets "routinely generat[e] comments in the discussion forums associated with each of the Portrait Gallery tweets regarding the events and selections of art" at the NPG. Id. ¶ 3. But he does not claim that Sajet uses the account to solicit artistic contributions—nor that Sajet (or any other Smithsonian officials) actually engage with feedback about the NPG via the account.

Without allegations of Sajet engaging in exclusively governmental speech, the look and feel of her Twitter account page are irrelevant post-Lindke, as is the fact that she changed the account handle four years before she blocked Raven. Even if, as Raven alleges, Sajet once purported to use the account as an NPG mouthpiece, the disclaimer was a public signal that she no longer sought to do so. Indeed, Raven concedes that, in 2018, Sajet began "to disassociate" her account "from the Smithsonian." Id. ¶ 31. Accordingly, Raven has failed to rebut the heavy presumption that Sajet's account was personal.

Perhaps recognizing that his allegations are wanting, Raven argues that Sajet "implode[d]" her disclaimer by blocking him. Opp'n at 13–15. Because "blocking operate[s] on a page-wide basis," Lindke, 601 U.S. at 204, Raven concludes that blocking is a "bridge too far," Opp'n at 13. But he places more weight on the Supreme Court's statements than they can bear. Nothing in Lindke suggests that the presumption afforded by a disclaimer is inapplicable in blocking cases. Nor does the Court's obligation in blocking cases to consider "*any* post" with

10

15

which Raven wished to engage somehow transform the standard by which the Court must evaluate his filings at this stage. See Lindke, 601 U.S. at 204 (emphasis added). The Court must consider all Sajet's tweets referenced in Raven's filings, as well as his general descriptions of her account. And it has done so. Based on these materials, Raven has not plausibly stated a claim for relief. Raven is not entitled to proceed to summary judgment simply because he was blocked. If he were, then any plaintiff alleging that a public official had blocked him from the official's social-media account would automatically survive a motion to dismiss—even if the public official's social-media activity did not reference the official's position in any way.

Rajet has not plausibly alleged that Sajet purported to use government authority on her Twitter account. Accordingly, he has not pled that she engaged in state action as necessary to make out a First Amendment claim.

### IV. Conclusion

For these reasons, the Court will dismiss the complaint. A separate Order accompanies this opinion.